IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID M. RHODES, | : | No.  4:CV 06-2122 |
| | : | |
| Plaintiff, | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| WARDEN RONNIE R. HOLT, | : | |
| EDWARD A. RYAN, and | : | |
| WILLIAM McFADDEN, | : | |
| Defendants. | : | |

## MEMORANDUM

### May 3, 2007

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before the Court is Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (doc. 5) filed on January 3, 2007.

For the following reasons, the Motion (doc. 5) will be granted.

**STANDARD OF REVIEW**:

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990).  In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure

to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d2 310 (3d Cir. 1986).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**:

Plaintiff David M. Rhodes ("Plaintiff" or "Rhodes") commenced the instant action against Defendants Ronnie R. Holt, Warden of the Federal Correctional Institution-Schuylkill, Edward A. Ryan, special agent for the United States Department of Homeland Security, and William McFadden, a former Unit Manager at FCI-Schuylkill by filing a complaint (doc. 1) on October 27, 2006.

Plaintiff was employed by the Federal Bureau of Prisons ("BOP") as a correctional officer at FCI-Schyulkill from 1993 until his termination on August 27, 2004.  (Complaint, ¶7).  Defendant McFadden was employed at FCI-Schyulkill when Rhodes began his employment in 1993 and by 2004 he was Unit Manager at the facility, where he worked closely with Rhodes.  (Complaint, ¶8).  Defendant Holt became the warden at FCI-Schuylkill in August 2004.  (Complaint, ¶9).  Prior

to becoming a special agent with the United States Department of Homeland Security, Defendant Ryan was employed as a correctional officer at the institution, where he worked with Rhodes and McFadden. (Complaint, ¶10).

Plaintiff alleges that after opposing certain inappropriate conduct at the prison, on August 27, 2004, he was removed by Holt from his position as a correctional officer based upon a charge of allegedly engaging in conduct unbecoming a correctional officer. (Complaint, ¶11).

On October 23, 2004, Ryan began a criminal investigation of Rhodes. (Complaint, ¶12). Plaintiff alleges that during the investigation, Ryan spoke with McFadden and Holt, and reviewed and discussed certain personnel materials related to Rhodes' termination. (Complaint, ¶13). Plaintiff further alleges that Ryan also spoke with employees of FCI-Schyulkill and that McFadden and Holt assisted Ryan with the collection of information and documentation arising from Rhodes' employment file and from an allegedly improper investigation leading up to his removal. (Complaint, ¶14). Plaintiff alleges that the information and documents that Ryan reviewed contained false and misleading statements concerning Rhodes' conduct, and that Ryan, McFadden and Holt knew or should have known that certain statements or representations in the documents were false and misleading. (Complaint, ¶¶15-16). These documents were used by Ryan to

initiate criminal proceedings against Rhodes. (Complaint, ¶17).

In the course of the investigation, Ryan also interviewed Margaret Connors, Assistant Human Resource Manager for the BOP. (Complaint, ¶18). Connors received an allegedly threatening phone call from Rhodes on July 26, 2004. (Complaint, ¶19). On October 25, 2004, Ryan interviewed Connors regarding the phone call and Plaintiff alleges that Ryan knowingly and intentionally took, *inter alia*, statements made by Connors out of context in an effort to create probable cause for an arrest. (Complaint, ¶¶20-21). Ryan indicated in his interview notes that Connors told him that during the phone call "Rhodes stated to her that he was 'working overtime to buy an AK-47' and that he already has, 'an arsenal of weapons that he would use.'" (Complaint, ¶23).

Connors' affidavit was prepared on November 18, 2004, over a week after Rhodes' arrest. Connors' affidavit states that Rhodes told her that he felt he was being penalized for making statements at work about working overtime to buy an AK-47. Connors does not indicate within the affidavit that Rhodes told her he had an arsenal of weapons. (Complaint, ¶23).

On October 29, 2004, Rhodes was arrested and charged with making illegal threats based on a criminal complaint and affidavit of probable cause signed by Ryan. Plaintiff alleges that the affidavit of probable cause was based on knowingly

false and misleading information. (Complaint, ¶24). Rhodes was immediately taken into custody. (Complaint, ¶25). After spending about two years in pre-trial detention, Rhodes was tried by a jury and acquitted on all charges. (Complaint, ¶26).

The complaint sets forth six counts against the Defendants: Count I, Violation of First Amendment (Retaliatory Prosecution); Count II, Violation of Fourth Amendment (False Arrest and False Imprisonment); Count III, Violation of Fifth Amendment (Malicious Prosecution); Count IV, Civil Conspiracy; Count V Intentional Infliction of Emotional Distress; and Count VI, Negligent Infliction of Emotional Distress. Plaintiff seeks compensatory and punitive damages and any other further relief deemed appropriate by the Court.

**DISCUSSION**:

The Defendants move this Court to dismiss the Plaintiff's complaint. Alternatively, the Defendants move the Court to grant the Defendants summary judgment in their favor. We shall discuss the arguments and merits of each claim in turn.

### A.   Constitutional Claims

The Defendants argue that Plaintiff's constitutional claims should be dismissed because they are pre-empted by statutory employment remedies.

Defendants argue that this Court lacks jurisdiction to hear this case[1] because it arises out of a federal employment-related dispute and accordingly it must be litigated via the Civil Service Reform Act of 1978("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111.  As the Defendants correctly assert, there is no remedy in a <u>Bivens</u> action for constitutional torts arising in the course of federal employment, inasmuch as such remedies are preempted by the comprehensive Civil Service Reform Act.  <u>See</u> <u>Bush v. Lucas</u>, 462 U.S. 367, 385-386 (1983).  Plaintiff argues, however, that the instant action does *not* arise out of the course of his federal employment because he is not seeking redress for any adverse "personnel decision."  Plaintiff asserts that he is seeking redress for actions taken by the Defendants *after* his termination from federal employment on August 27, 2004, including the criminal investigation and the events occurring thereafter.

In <u>Bush</u>, the plaintiff, a former NASA employee, was demoted after making publically critical statements of the administration.  <u>Id.</u> at 369-370.  After internal proceedings, the plaintiff was restored to his former position and provided back pay.  <u>Id.</u> at 370.  The plaintiff also filed an action in federal court against his

---

[1] As noted by the Defendants, Counts I, II and III of the complaint assert constitutional claims against the Defendants, invoking Plaintiff's rights under the First, Fourth, and Fifth Amendments.  Although Plaintiff does not state the nature of his cause of action with regard to these claims, he presumably seeks to bring them under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  In <u>Bivens</u>, the Supreme Court held that the Constitution itself supports a private cause of action for damages against a federal official.

supervisor and others, claiming that his First Amendment rights were violated because he was demoted in retaliation for his speech.  Id.  The Supreme Court held that the defendants were entitled to summary judgment on the plaintiff's constitutional claim because meaningful statutory remedies were available to him under the CSRA for his claim of retaliation.  Id. at 368.

     In pertinent part, the Supreme Court noted:

> Federal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures – administrative and judicial – by which improper action may be redressed.  They apply to a multitude of personnel decisions that are made daily by federal agencies.  Constitutional challenges to agency action, such as the First Amendment claims raised by petitioner, are fully cognizable within this system.  As the record in this case demonstrates, the Government's comprehensive scheme is costly to administer, but it provides meaningful remedies for employees who may have been unfairly disciplined for making critical comments about their agencies.

Id. at 385-386.  In a footnote, the Supreme Court noted that "[n]ot all personnel actions are covered by this system," and moreover that "certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme."  Id. at 385 n. 28.

     The Defendants also submit that the case of Sarullo v. United States Postal Service, 352 F.3d 789 (3d Cir. 2003) supports their arguments for dismissal of

Plaintiff's constitutional claims. In <u>Sarullo</u>, the plaintiff was a former Postal Service employee who had been discharged after he had been arrested for dealing drugs at work. <u>Id.</u> at 791. The criminal charges against the plaintiff were dismissed and he brought a <u>Bivens</u> action for malicious prosecution against the Postal Service. <u>Id.</u> at 793.

The Third Circuit, in affirming the district court's grant of summary judgment, held that the action arose out of the employment context and therefore the CSRA provided the appropriate remedy. In particular, the Third Circuit noted that:

> A commonsense reading of the CSRA and of the jurisprudence it has generated force us to conclude that measures designed to investigate an employee who is dealing drugs at work are actions arising out of the employment context. True, those same actions could have taken place in a wide variety of places: Sarullo's home, the street corner, a local bar. But under the facts of this case, these alleged actions took place at work, and Sarullo was discharged because of his alleged drug dealings at work – not because of the alleged illegal activity taking place in the privacy of his own home – or elsewhere – outside of working hours. There is no reasonable explication of the CSRA which would have us decide that dealing drugs at work is not related to the employment context.

<u>Id.</u> at 795-796.

As previously noted, Plaintiff argues that his constitutional claims arise out of conduct by the Defendants which are not "personnel decisions," and therefore he is not afforded meaningful remedies under the CSRA. The Plaintiff further

argues that Sarullo supports his argument that the instant action does not arise out of the context of employment because his conduct did not occur at work. Defendants argue that Ryan's investigation of Rhodes and the subsequent prosecution arose out of the context of Rhodes' federal employment, because the criminal complaint was based upon threats made to BOP officials whom Rhodes contacted by virtue of his former employment with the BOP.  Defendants submit that while the Third Circuit in Sarullo emphasized the fact that the plaintiff had been dealing drugs *at work* in rendering its finding that his malicious prosecution claim arose out of his federal employment, Rhodes' actions (i.e. the allegedly threatening phone calls) resulted only from employment actions taken against him by the BOP and directed at federal personnel connected with his former employment.

> The Defendants argue that the central inquiry into whether a certain claim arises out of federal employment depends not on where an action took place, although that they do concede that such a circumstance may be a factor in a court's ultimate decision.  We agree with the Defendants' argument and do not read Sarullo to stand for the proposition that the *only* way a claim may arise out of federal employment is if it occurs at the workplace.  Therefore, although it is true that the conduct with which Rhodes was charged did not occur in the workplace,

the touchstone of our inquiry is whether the claims against the Defendants arose out of the context of his federal employment. We find that they necessarily do. While it is true that the Plaintiff made the two telephone calls that were the factual underpinnings of the charges against him from his home and *not* from the workplace, what is compelling is that the reason for and the nature of the calls involved his employment at FCI-Schyulkill and with the BOP as a correctional officer and his perceived mistreatment at the hands of his co-workers and superiors. Simply stated, Plaintiff was ostensibly motivated to make the July and October 2004 calls to Connors by virtue of his employment.[2] Plaintiff's complaints to Connors related specifically to events that occurred during the course of his employment and the reasons for his termination. They were not generalized complaints that could have been made without the precursor of an employment relationship between Rhodes and the BOP. The investigation which led to the charges levied against Rhodes and the ultimately unsuccessful prosecution of him were based upon the perceived threatening calls, which pertained to his employment with and termination by the BOP. The investigation undertaken by Ryan clearly arose out of Rhodes' federal employment, and accordingly Plaintiff's

---

[2] Moreover, and notably Rhodes was still employed by the BOP when he made the July 2004 call to Connors.

constitutional claims against Ryan must be dismissed because they are preempted by alternate statutory remedies provided by the CSRA.

Furthermore, with respect to Defendants McFadden and Holt, the allegations against them are that they "reviewed and discussed certain personnel materials related to Rhodes' termination" with Ryan and assisted Ryan with "the collection of information and documentation arising from Rhodes' employment file and from an improper investigation leading up to his removal." Plaintiff alleges that McFadden and Holt knew the information was false and that Ryan ultimately used the information in his criminal investigation. (Complaint, ¶¶13-17).

In sum and substance, Plaintiff's allegations against McFadden and Holt are that they collected information generated during an internal BOP investigation of him and turned it over to a federal agent investigating threats made to BOP employees. Neither McFadden or Holt are alleged to have acted outside of their capacity as BOP employees.[3] Our determination is that Plaintiff's constitutional claims against McFadden and Holt necessarily arise out of the context of his federal employment, and therefore must be dismissed by this Court because they

---

[3] Attached to the Defendants' reply brief is a Certification by the United States Attorney that he finds the Defendants to have acted within the scope of their employment as employees of the United States as it relates to the conduct complained of in the Plaintiff's complaint. (Rec. Doc. 20, Ex. 3).

are statutorily preempted.[4]

### B.     Tort Claims

Defendants move the Court to dismiss Counts IV (Civil Conspiracy), Count V (Intentional Infliction of Emotional Distress), and Count VI (Negligent Infliction of Emotional Distress). Defendants argue that these claims can only be brought against the United States via the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(b)(1), but assert that remedies in this case are unavailable under the FTCA because they are statutorily preempted by the CSRA.[5]

Defendants submit that any damages claims that Rhodes might bring under Bivens are preempted by the CSRA, and any claims he might bring under the FTCA are likewise preempted by the CSRA because they too arise out of the context of his employment. Defendants cite case law from the United States Court of Appeals for the Eight Circuit to support their proposition.

In Premachandra v. United States, 739 F.2d 392 (8th Cir. 1984), an endocrinologist discharged by the Veterans Administration brought an action for

---

[4] In light of our ruling that Plaintiff's constitutional claims are dismissed because they are preempted by the CSRA, it is unnecessary for us to undertake an analysis of the merits of these claims.

[5] Plaintiff's only response to the Defendants' preemption argument is that his tort claims do not arise out of the context of his federal employment. As discussed at length earlier in this Memorandum, we *do* find that Plaintiff's claims arise out of the context of his federal employment. However, for the reasons that follow, we do not find that any tort claims advanced by Plaintiff are necessarily preempted by the CSRA as a matter of law.

damages under the FTCA in federal court for wrongful termination.  The Eighth Circuit, in affirming the district court's dismissal of the action, agreed that the civil service remedies available to the plaintiff under the Federal Employees Compensation Act, 5 U.S.C. § 8101, *et seq.,* were his exclusive means of redress. It further noted that, "[w]hile we should be reluctant judicially to erode the broad remedy provided by the [FTCA], we are equally reluctant to ignore a Congressional intent that civil service remedies be the exclusive means for federal employees to challenge wrongful termination decisions."  Id. at 393-394.

While we find the ruling of the Eighth Circuit in Premachandra to be well-reasoned and logical, we find it distinguishable from the case at bar, notably because Premanchandra dealt with an action for wrongful termination, while the instant case involves civil conspiracy and emotional distress claims.  We will not accept the Defendants' invitation to unilaterally apply the Eight Circuit's holding in Premachandra to the instant matter.  Nonetheless, Rhodes' tort claims necessarily fail because he has not alleged, nor can he prove, that he has met the exhaustion requirements of the FTCA.

The FTCA's exhaustion requirement is found at 28 U.S.C. § 2675(a).  In Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995), the Third Circuit succinctly and comprehensively explained the FTCA's exhaustion requirement:

> Before commencing an action under the FTCA, a claimant must have first presented the claim, in writing and within two years after its accrual, to the appropriate federal agency, and the claim must have been denied. 28 U.S.C § 2401(b), 2675(a). To be properly presented to the federal agency, the damages claim must be for a sum certain. 28 C.F.R. §14.2(a) (1987). The requirements that a claimant timely present a claim, do so in writing, and request a sum certain are jurisdictional prerequisites to a suit under the FTCA.

"This requirement is jurisdictional and cannot be waived." Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971); see also Medina v. City of Philadelphia, 2007 U.S. App. LEXIS 217, *5-6 (3d Cir. 2007).

Within the complaint, the Plaintiff has failed to allege that he has presented his FTCA claims to the BOP. The Defendants assert that the BOP has determined that Rhodes has not presented his claims to it pursuant to § 2675(a).[6] Accordingly, we find that the Plaintiff has not exhausted his remedies with the appropriate federal agency pursuant to the FTCA and his tort claims shall therefore be dismissed.[7]

---

[6] As the Third Circuit noted in Medina, the Government's jurisdictional challenge to Plaintiff's tort claims is factual in nature, and therefore the Court is permitted to look outside of the pleadings to determine whether Plaintiff has exhausted. Id. at *6.

[7] Plaintiff baldly asserts in his opposing brief that his tort claims are not barred by the FTCA because he has sued each Defendant in both his *individual* and official capacity. However, despite the fact that Plaintiff has attempted to raise his tort claims against the Defendants in their individual capacities, he is barred from doing so. An individual capacity suit under Bivens against federal officials or employees may only be maintained if a constitutional right has been violated. Counts IV, V, and VI of the complaint purport to state claims of civil conspiracy, and for intentional and negligent infliction of emotional distress. These claims are not constitutional in nature, but sound in tort law, and cannot be maintained *individually* under

**CONCLUSION**:

Accordingly, Plaintiff's constitutional claims contained in Counts I, II and III shall be dismissed because they are statutorily preempted by the remedies available under the CSRA.  Furthermore, Plaintiff's tort claims contained in Counts IV, V, and VI shall be dismissed because Plaintiff has failed to exhaust his remedies as required under the FTCA.

An appropriate Order shall issue.

---

Bivens against the Defendants.  Accordingly, the FTCA applies because the tort claims can only be pursued against the Defendants in their *official* capacities as federal employees.